920 So.2d 1050 (2006)
Donnifer PETERS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01169-COA.
Court of Appeals of Mississippi.
February 7, 2006.
*1052 Raymond O. Boutwell, attorney for appellant.
Office of the Attorney General by Deirdre McCrory, attorney for appellee.
EN BANC.
BARNES, J., for the Court.
¶ 1. Donnifer Peters was tried and convicted in the Circuit Court of Walthall County on charges of burglary and possession of a burglary tool and was sentenced to consecutive terms of seven years and five years, respectively, in the custody of the Mississippi Department of Corrections. Aggrieved by the judgment, Peters timely appealed to this Court. Finding no error, we affirm.

*1053 SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On the morning of July 11, 2003, Walthall County District Five Supervisor Clifton "Pop" Carr arrived at work to find that two buildings on the district's property had been burglarized. Carr testified that the doors to the district's main shop and a smaller tool shed had been pried open, and that several items had been removed from the buildings. Billy Wayne Thornhill, a deputy sheriff with the Walthall County Sheriff's Department, testified that when he arrived at the scene that morning, county employee Brad Dunaway directed him to "two or three shoe prints" in the area near the two buildings. Thornhill testified that upon discovering the shoe prints, he called Investigator Truett Simmons to the scene. When Simmons arrived at the scene, he asked Thornhill to make a plaster cast of a shoe print that appeared in some newly poured asphalt. Simmons testified that the shoe print featured a K-Swiss emblem; furthermore, he testified that none of the county employees were wearing K-Swiss shoes at the time.
¶ 3. Deputy Sheriff Kenny Martin testified that later that day, he received a call reporting that Peters had assaulted his wife, Kimberly Peters. Martin testified that the department had an outstanding warrant on Peters stemming from a charge of simple assault, and that he went to Peters's residence that day to execute the warrant. Martin stated that when he arrived at Peters's residence, Peters was sitting in a car that was parked in the yard. Martin testified that when he told Peters of the warrant for his arrest, Peters said, "Hell no, I ain't going no f where," and started the car. At this point, Martin testified, the officers used pepper spray in an attempt to stop Peters from escaping. After being sprayed, Peters managed to drive a short distance before hitting a pine tree; he was taken into custody shortly thereafter.
¶ 4. Martin testified that after Peters was taken into custody, the sheriff's department received written consent from Kimberly Peters, the owner of the car, to search the automobile. Recovered from the automobile were a small crowbar, wire cutters, vice grips, a yellow-handled screwdriver, a red-handled screwdriver, and a pair of sunglasses. At Peters's trial, Brad Dunaway testified that the sunglasses belonged to him, that he kept them in the glove compartment of a truck kept in the district's main shop, and that the sunglasses were missing after the burglary. Dunaway also identified the wire cutters and the red screwdriver as items that had been kept in the shop. Dunaway stated that he recognized the wire cutters in particular because they possessed a number of distinguishing marks. Lastly, Dunaway testified that he did not recognize the crowbar taken from Peters's car.
¶ 5. Upon Peters's arrival at the Walthall County Jail, Deputy Thornhill noticed that Peters was wearing large K-Swiss shoes. Thornhill testified that he ordered Peters to remove his shoes, and then "took the shoes into evidence so they wouldn't get lost." At trial, footwear impression and examination expert witness Joe Andrews testified that the cast taken by Deputy Thornhill possessed "all the class characteristics" of the right shoe taken from Peters at the jailhouse. However, Andrews testified that due to a lack of detail in the cast, he was unable to make a more conclusive statement.
¶ 6. Taking the stand in his defense, Peters denied that he committed the burglary. He claimed that the tools and sunglasses found in the car belonged to him, and stated that what Brad Dunaway identified as his own sunglasses were actually *1054 safety glasses Peters used when performing welding work. Peters also denied that he had ever owned or worn the pair of K-Swiss shoes introduced by the State.
¶ 7. Peters was convicted of burglary and possession of a burglary tool and was sentenced to consecutive terms of seven years and five years, respectively, in the custody of the Mississippi Department of Corrections. After his conviction, Peters filed a motion for judgment notwithstanding the verdict, or in the alternative, a new trial, which was denied by the circuit court. On appeal, Peters asserts: (1) that the evidence presented at trial was insufficient to convict him on the charge of possession of burglary tools; (2) that the trial court erred in denying his motion to suppress the items taken from the car as well as the K-Swiss shoes; (3) that the trial court erred in failing to grant a continuance in the case; and (4) that the trial judge erred in failing to recuse himself from the case.

ISSUES AND ANALYSIS

I. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN PETERS'S CONVICTION FOR POSSESSION OF BURGLARY TOOLS.
¶ 8. Motions for directed verdict, peremptory instruction, and judgment notwithstanding the verdict test the legal sufficiency of the State's evidence. Carr v. State, 911 So.2d 589, 590 (¶ 5) (Miss.Ct. App.2005) (citing Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003)). In considering whether the evidence is legally sufficient to sustain a conviction, we must ascertain whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." Bush v. State, 895 So.2d 836, 843-44 (¶ 16) (Miss.2005) (internal quotes omitted). Viewing the evidence in the light most favorable to the prosecution, we must determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. In the present case, Peters asserts that the trial court erred in denying his motion for directed verdict as to the charge of possession of burglary tools. He argues that the crowbar was an ordinary tool that any individual is likely to possess and transport in one's automobile, and furthermore, that the State failed to prove that he intended to use the crowbar for an unlawful purpose.
¶ 9. Section 97-17-35 of the Mississippi Code Annotated (Rev.2000) states, in relevant part:
It is unlawful for any person to have in his possession implements, tools, or instruments designed to aid in the commission of burglary, larceny or robbery; and on the conviction of any person thereof, he shall be punished by imprisonment in the penitentiary not exceeding five (5) years, or in the county jail not exceeding one year.
¶ 10. The Mississippi Supreme Court has stated that the elements of the crime of possession of burglary tools are: (1) adaptation and design of the tool for breaking and entering; (2) possession of such tools by one with knowledge of their character; and (3) a general intent to use or employ them in taking and carrying away another's property. See Pamphlet v. State, 271 So.2d 403, 404 (Miss.1972); Brownlee v. State, 912 So.2d 1000, 1002-03 (¶ 8) (Miss.Ct.App.2005). As to the first element, the supreme court has held that even tools designed for a lawful purpose can be considered burglar's tools under the statute. See McCollum v. State, 197 So.2d 252, 256-57 (Miss.1967). The key question in determining whether a particular tool *1055 qualifies as a burglary tool under the statute is "whether the evidence reveals circumstances from which it may be inferred beyond a reasonable doubt that the possessor intended that he or some other person use the article or articles in aid of burglary or other similar crime." Id. at 256-57. Regarding the element of possession, Peters does not contest that the State proved this beyond a reasonable doubt. Lastly, as to the element of intent, "[I]t is not necessary to show a specific intent to use the tools in a burglary," to convict of possessing burglary tools; however, "there must be evidence either that the tools have probably been recently used for purpose of unlawfully breaking and entering or that they are about to be used for such purpose." Pamphlet, 271 So.2d at 404.
¶ 11. Looking at the evidence in the light most favorable to the prosecution, we cannot find that the evidence was insufficient to sustain Peters's conviction for possession of burglary tools. The evidence was more than sufficient to show beyond a reasonable doubt that Peters possessed the crowbar knowing of its character, and that he intended to use, or had in fact used the crowbar to burglarize the county property. Peters's assignment of error is without merit.

II. WHETHER THE TRIAL COURT ERRED IN DENYING PETERS'S MOTION TO SUPPRESS EVIDENCE TAKEN FROM THE CAR AS WELL AS HIS PERSON.
¶ 12. "The standard of review for the admission of or refusal to admit evidence is well-settled: admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." Jones v. State, 912 So.2d 501, 504 (¶ 6) (Miss.Ct.App.2005) (citing Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc., 716 So.2d 200, 210 (¶ 36) (Miss.1998)). On appeal, Peters contends that the trial court erred in denying his motion to exclude the evidence taken from the car and the shoes that were taken from him at the Walthall County Jail.

A. Evidence taken from the car
¶ 13. Peters claims that the small crowbar, wire cutters, vice grips, screwdrivers, and sunglasses were illegally seized in violation of his rights under the Mississippi and United States constitutions. Specifically, Peters asserts that the sheriff's department "searched the vehicle ... without probable cause, without a search warrant, and without his consent" in violation of his civil rights. He asks this Court to find that the trial court erred in denying his motion to suppress the items taken from the automobile.
¶ 14. The Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution of 1890 prohibit searches and seizures conducted without probable cause and a search warrant, except under certain limited exceptions. See United States v. Ross, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Walker v. State, 881 So.2d 820, 827 (¶ 14) (Miss.2004). One such exception exists wherein a search conducted pursuant to voluntary consent obviates the need for either probable cause or a warrant. See Walker, 881 So.2d at 827 (¶ 16); Hudson v. State, 475 So.2d 156, 157-58 (Miss.1985). The Mississippi Supreme Court has held that such consent "may be given by a third party who possessed common authority, mutual use and joint control over property not in the exclusive control or possession of the defendant and where the defendant had no reasonable expectation of privacy." Mettetal *1056 v. State, 615 So.2d 600, 603 (Miss.1993). Though Peters asserts that the automobile was within his exclusive possession and control at the time of the search, the record does not support this contention; Kimberly Peters consented to the search some thirty minutes after her husband was taken into custody. Furthermore, Peters put forth no evidence that, as the titled owner of the vehicle, Kimberly did not possess common authority, mutual use, and joint control over it.[1] Accordingly, we find that this search was properly conducted pursuant to valid consent, and that the trial court did not abuse its discretion in denying Peters's motion to suppress. This issue is without merit.

B. Peters's shoes
¶ 15. Peters also asserts that his shoes were seized illegally by Deputy Thornhill. However, "[I]t is a long-standing rule in this, and other jurisdictions that, pursuant to a lawful arrest, law enforcement officials may seize personal effects and clothing from one who has been arrested." Brown v. State, 690 So.2d 276, 285 (Miss.1996) (quoting Shell v. State, 554 So.2d 887, 896 (Miss.1989), rev'd on other grounds, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990)). Such a search allows police to "discover weapons and means of escape; to prevent means of injury to the prisoner and others; to discover necessary medical requirements; to discover evidence in connection with the charge for which accused was arrested; to discover wounds and need for immediate first aid, and to preserve the property of the defendant." Shell, 554 So.2d at 896. Peters's contention that Deputy Thornhill illegally seized his shoes is wholly without merit.

III. WHETHER THE TRIAL COURT ERRED IN FAILING TO GRANT A CONTINUANCE.
¶ 16. On May 10, 2004, the day of trial, Peters's attorney filed a motion for continuance in which he claimed that he had been denied access to Peters on the previous day, Sunday, May 9. In the motion, Peters's attorney claimed that Joe Skeen, the deputy in charge of the Marion County Jail, advised him that the prison warden had a policy prohibiting attorneys from meeting with clients on Sundays. At the motion hearing prior to trial, defense counsel claimed that because May 9 was Mother's Day, he did not know how to contact anyone who could remedy the situation. The trial court overruled the motion for continuance, stating that Peters's counsel had not been diligent in attempting to contact either the court or the sheriff. Peters alleges that the trial court erred in denying the motion for continuance.
¶ 17. "The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice." Bridges v. State, 826 So.2d 750, 753 (¶ 4) (Miss.Ct.App.2002) (quoting Simmons v. State, 805 So.2d 452, 484 (¶ 72) *1057 (Miss.2002)). The moving party bears the burden of proving that the trial court abused its discretion in denying a motion for continuance. Morris v. State, 595 So.2d 840, 844 (Miss.1991).
¶ 18. In the case at hand, we cannot find that the trial court abused its discretion in denying Peters's motion for continuance. Though Peters claims that he was deprived of the ability to make final preparations for trial, the record bears out that the trial had been scheduled for "a good long while," at the very least since early April. It is thus apparent that Peters and his attorney had ample time to confer prior to trial. Further, the trial judge stated on the record that he had been available had defense counsel tried to contact him. Peters has not demonstrated to this Court that the trial court abused its discretion in denying the motion for continuance. This issue is without merit.

IV. WHETHER THE TRIAL JUDGE ERRED IN FAILING TO RECUSE HIMSELF FROM THE CASE.
¶ 19. At his January 23, 2004 arraignment and bond hearing, Peters was initially granted bond of $25,000. However, during the following exchange, the circuit judge quadrupled that amount.
DEFENDANT PETERS: Can I speak?
THE COURT: Sure
DEFENDANT [PETERS]: Well, Your Honor, how can I be indicted and charged when I never been arrested. I never made an initial appearance on [the charges].
THE COURT: Well, you have been muchly arrested now.
DEFENDANT PETERS: That's what I'm saying, how can I be indicted on a charge I never been arrested on?
THE COURT: You don't have to, you don't have to have a preliminary hearing.
DEFENDANT PETERS: But I got to at least be arrested.
THE COURT: You don't have to be arrested at all.
DEFENDANT PETERS: How you don't have to be arrested 
THE COURT: All you got to do is be served a copy of the indictment and that's your arrest. You don't have to be arrested before you're served with a copy of the indictment.
DEFENDANT PETERS: Without a arrest? Come on, Judge.
THE COURT: You have been served 
DEFENDANT PETERS: Come on, Judge.
THE COURT: You have been formally arraigned.
DEFENDANT PETERS: Come on, Judge. That's unlawful, you know that.
THE COURT: Your bond is now $50,000.
DEFENDANT PETERS: I don't care if you made it a 100,000.
THE COURT: Now it's a hundred.
MR. BOUTWELL [defense counsel]: Mr. Peters, I would suggest that you control yourself.
DEFENDANT PETERS: That is bull, man.
¶ 20. Just over a month before trial, Peters filed a motion for recusal in which he asserted that the circuit court judge had failed to act with impartiality toward Peters at his arraignment, that the judge had imposed an unreasonable bond amount, and that the judge "showed open animosity and prejudice" toward Peters. In a hearing held on the day of trial, the circuit judge denied the motion for recusal. Peters alleges that this was error.
*1058 ¶ 21. The standard of review in a recusal case is as follows:
This Court applies an objective standard in deciding whether a judge should have disqualified himself. A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality.... The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application. On appeal, a trial judge is presumed to be qualified and unbiased and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption.... In determining whether a judge should have recused himself, the reviewing court must consider the trial as a whole and examine every ruling to determine if those rulings were prejudicial to the complaining party.
Jones v. State, 841 So.2d 115, 135 (¶ 60) (Miss.2003) (internal quotes and citations omitted).
¶ 22. Though he contends that the trial court set an unreasonable bond, Peters is unable to point to any ruling by the trial court that prejudiced his defense. The only other ruling he challenges on appeal is the trial court's denial of his motion for continuance, and we have held supra that this ruling was proper. Thus, Peters is unable to overcome the presumption that the trial judge was qualified and unbiased to hear his case. Accordingly, we find this issue to be without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF WALTHALL COUNTY OF CONVICTION OF BURGLARY AND SENTENCE OF SEVEN YEARS AND POSSESSION OF BURGLARY TOOL AND SENTENCE OF FIVE YEARS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCES TO RUN CONSECUTIVELY, PAY RESTITUTION TO WALTHALL COUNTY AND FINE OF $10,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALTHALL COUNTY.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.
NOTES
[1] Assuming only for the sake of argument that Kimberly did not have common authority or mutual use of the automobile, she still possessed apparent authority to authorize the search. See Mettetal, 615 So.2d at 603-04. In determining whether a party possesses such authority, the key question is whether "the facts available to the officer at the moment... warrant a man of reasonable caution in the belief" that the consenting party had authority over the property. Id. (quoting Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)). Looking to the facts of this case, we find that because Kimberly Peters was the titled owner of the automobile, the officers were reasonable in their belief that she possessed common authority, joint control, and mutual use over the car so as to give her the authority to consent to the search.